# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ALBERT BRODZINSKY, EVELYN
BRODZINSKY AND RUBY ANN NEILL,


      Plaintiffs,


       v.


FRONTPOINT PARTNERS LLC, YVES
BENHAMOU, JOSEPH F. "CHIP"
SKOWRON, FRONTPOINT
HEALTHCARE FUND, L.P.,
FRONTPOINT HEALTHCARE FUND GP,
LLC, FRONTPOINT HEALTHCARE
CENTENNIAL FUND, L.P.,
FRONTPOINT HEALTHCARE
CENTENNIAL FUND GP, LLC,
FRONTPOINT HEALTHCARE FUND 2X,
L.P., FRONTPOINT HEALTHCARE
FUND 2X GP, LLC, FRONTPOINT
HEALTHCARE HORIZONS FUND, L.P.,
FRONTPOINT HEALTHCARE
HORIZONS FUND GP, LLC,
FRONTPOINT HEALTHCARE LONG
HORIZONS FUND, L.P., FRONTPOINT
HEALTHCARE LONG HORIZONS FUND
GP, LLC, FRONTPOINT HEALTHCARE I
FUND, L.P., FRONTPOINT UNIVERSAL
GP, LLC,


      Defendants.

DOCKET NO. 3:11-cv-00010-WWE

March 22, 2011

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS ALBERT
BRODZINSKY, EVELYN BRODZINSKY AND RUBY ANN NEILL'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND FOR
APPROVAL OF SELECTION OF LEAD COUNSEL**

Plaintiffs Albert Brodzinsky, Evelyn Brodzinsky and Ruby Ann Neill ("Plaintiffs") respectfully submit this memorandum of law in support of their motion for an Order: (i) appointing them Lead Plaintiffs in this action pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (ii) approving their selection of Shapiro Haber & Urmy LLP to serve as Lead Counsel and Izard Nobel LLP as Liaison Counsel; and (iii) granting such other and further relief as the Court may deem just and proper.  Plaintiffs' motion is also supported by the Declaration of Edward F. Haber In Support of Plaintiffs Albert Brodzinsky, Evelyn Brodzinsky and Ruby Ann Neill's Motion for Appointment as Lead Plaintiffs and for Approval of Selection of Lead Counsel (the "Haber Declaration").

## I.      INTRODUCTION

On January 4, 2011, Plaintiffs Albert and Evelyn Brodzinsky, through undersigned counsel, filed the above-captioned class action in this Court against Defendants FrontPoint Partners LLP ("FrontPoint"), Yves Benhamou ("Benhamou"), Joseph F. "Chip" Skowron ("Skowron") and six John Doe investment advisors and six John Doe hedge funds affiliated with FrontPoint (collectively "Defendants").  On March 2, 2011, the Brodzinskys along with Plaintiff Ruby Ann Neill filed a First Amended Class Action Complaint ("the Complaint"), which, *inter alia*, identified the FrontPoint investment advisor and hedge fund defendants.  This class action is brought on behalf of purchasers of the common stock of Human Genome Sciences, Inc. ("HGSI") during the period between December 7, 2007 and February 5, 2008, inclusive ("the Class Period").

The PSLRA requires that courts appoint as lead plaintiff a member or members of the putative class who have satisfied certain procedural prerequisites and also constitute the most

adequate representative of the prospective class.  As demonstrated herein, Plaintiffs are the most adequate representatives and they should be appointed Lead Plaintiffs; their choice of counsel, Shapiro Haber & Urmy LLP, should be appointed Lead Counsel; and Izard Nobel LLP should be appointed Liaison Counsel.

The propriety of appointing Plaintiffs as Lead Plaintiffs and their counsel as Lead Counsel is demonstrated by their vigorous prosecution of this case to date.  Following the federal government's filing of criminal and civil actions against Benhamou, Plaintiffs filed the present action seeking appropriate relief for the class.  This is the only action of its kind filed to date.  In an effort to ensure the class would ultimately be able to recover on any judgment against the hedge fund defendants, Plaintiffs also immediately moved for a temporary restraining order and preliminary injunction that would have restricted asset transfers by the defendant hedge funds.  Plaintiffs also moved for limited expedited discovery.  After extensive, arm's-length negotiations with the FrontPoint-related Defendants, Plaintiffs successfully reached an agreement which achieved the objective of their injunction motion – ensuring payment of any judgment obtained against the hedge fund defendants.  In addition, Plaintiffs obtained information sought by their motion for expedited discovery, i.e. the identities of each Defendant and certain financial information regarding the FrontPoint hedge funds.  Having obtained that information, Plaintiffs then promptly filed the amended Complaint which also added Ruby Ann Neill as a plaintiff.  Such aggressive and effective prosecution exemplifies the approach Plaintiffs and their counsel will take through the course of this litigation and demonstrates why Plaintiffs are the most adequate representatives of the class and why the Court should approve their choice of counsel.

## II.        NATURE OF THE ACTION

The Complaint alleges that Defendants violated the antifraud provisions of the federal securities laws, including Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R § 240], and that Defendants are also liable under Section 20A of the Exchange Act, [15 U.S.C. § 78t-1], due to their unlawful insider trading of HGSI common stock during the Class Period.  Specifically, the Complaint alleges that the Hedge Fund Defendants[1] sold more than six million shares of HGSI common stock while their portfolio manager, Defendant Skowron, and hence FrontPoint, the Hedge Fund Defendants and the Investment Advisor Defendants,[2] possessed material, negative non-public information concerning HGSI's clinical trial for the drug Albumin Interferon Alfa 2-a ("Albuferon").  FrontPoint, the Hedge Fund Defendants and the Investment Advisor Defendants (collectively the "FrontPoint Defendants") and Skowron received this material, negative non-public information from Defendant Benhamou, one of five members of a Steering Committee overseeing the Albuferon trial.  The Complaint further alleges that as a result of Defendants' unlawful insider trading, the Hedge Fund Defendants avoided at least $30 million in losses by selling all of their HGSI stock prior to the negative information being made public, at which point the price of HGSI stock fell precipitously.  The Complaint seeks disgorgement to the class of the $30 million in avoided losses.

---

[1] The "Hedge Fund Defendants" are:  FrontPoint Healthcare Fund, L.P., FrontPoint Healthcare Centennial Fund, L.P., FrontPoint Healthcare Fund 2X, L.P., FrontPoint Healthcare Horizons Fund, L.P., FrontPoint Healthcare Long Horizons Fund, L.P., and FrontPoint Healthcare I Fund, L.P.

[2] The "Investment Advisor Defendants" are:   FrontPoint Healthcare Fund GP, LLC, FrontPoint Healthcare Centennial Fund GP, LLC, FrontPoint Healthcare Fund 2X GP, LLC, FrontPoint Healthcare Horizons Fund GP, LLC, FrontPoint Healthcare Long Horizons Fund GP, LLC, and FrontPoint Universal GP, LLC.

### III.    PROCEDURAL HISTORY

Plaintiffs Albert and Evelyn Brodzinsky filed this action on January 4, 2011.  Doc. No. 1. On January 5, 2011, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction Against Defendant FrontPoint and Hedge Fund Defendants I-VI (Doc. No. 6) ("Injunction Motion"), and a Motion for Limited Expedited Discovery (Doc. No. 7) ("Discovery Motion").  Plaintiffs' Injunction Motion sought to enjoin and restrain the further distribution of any funds or assets of the Hedge Fund Defendants, and the Discovery Motion sought the identities of the then-unknown John Doe Defendants and information about the amount of assets remaining in the Hedge Fund Defendants.

Plaintiffs' Injunction Motion was critical to protecting the interests of the class. Following the public filing by the Securities and Exchange Commission and Department of Justice of their civil and criminal actions against Defendant Benhamou concerning the insider trading at issue in this case, FrontPoint disclosed that it had received $3 billion in redemption requests, half of which were redemption requests by investors in the Hedge Fund Defendants. Memorandum in Support of Injunction Motion (Doc. No. 6-1) at 3.  In response to those massive redemption requests, FrontPoint had liquidated the six Hedge Fund Defendants and already returned 97% of the $1.5 billion of net assets in those funds to FrontPoint investors.  *Id.*  This would have left, at most, about $45 million in net assets remaining in the Hedge Fund Defendants at the time the Injunction Motion was filed.  This was *very* significant in light of the fact that, as alleged in the Complaint, the Hedge Fund Defendants had avoided at least $30 million in losses through their unlawful insider trading which should be disgorged to the class. Because of the imminent risk that the remaining assets of the Hedge Fund Defendants would be

5

disbursed to the funds' investors, Plaintiffs filed their Injunction Motion to enjoin any further disbursement of assets or funds from the Hedge Fund Defendants.

Plaintiffs' counsel and Defendants' counsel then commenced discussions in an effort to resolve the issues raised in the Injunction Motion.  On January 24, 2011, Plaintiffs assented to Defendants' Motion to Extend their time for responding to the Injunction Motion until February 9, 2011, in exchange for the FrontPoint Defendants' explicit agreement not to disburse or distribute any assets or funds owned by or held for or in the name of the Hedge Fund Defendants to partners or other equity owners of the funds (except for payment of operating expenses in the ordinary course of business) until March 2, 2011.  Doc. No. 25 at 1.  Plaintiffs' counsel required this "standstill" until March 2, 2011 to provide sufficient time after the Defendants' then-anticipated February 9 response to the Injunction Motion for the parties to be heard by the Court and for the Court to rule on the Injunction Motion before any additional assets of the Hedge Fund Defendants were distributed to the funds' investors.  As the parties continued to negotiate and discuss the possible resolution of Plaintiffs' Injunction Motion, Plaintiffs agreed to additional extensions of time for Defendants to respond to those motions while maintaining appropriate protection of the interests of the class.  *See* Doc. Nos. 35, 41 and 44.

As a result of the parties' negotiations, and as a direct consequence of the filing of this action and the Injunction Motion by Plaintiffs, indemnity and liability assumption agreements were entered into which ensure that Plaintiffs and the class will be able to recover if they obtain a judgment against the Hedge Fund Defendants in this action.  Plaintiffs, through their counsel, entered into the Agreement for Withdrawal of Plaintiffs' Motion for Temporary Restraining

Order and Preliminary Injunction with the FrontPoint Defendants (the "Agreement").[3]  Pursuant

to the Agreement, the Plaintiffs withdrew Plaintiffs' Injunction Motion by filing Plaintiffs'

Notice of Withdrawal and Withdrawal of Plaintiffs' Motion for Temporary Restraining Order

and Preliminary Injunction.  Doc. No. 54 at 2.[4]

## IV.    ARGUMENT

### A.  PLAINTIFFS SHOULD BE APPOINTED LEAD PLAINTIFFS

#### (i)       Plaintiffs' Motion is Timely

The PSLRA, which amends the Exchange Act by adding § 21D (codified at 15 U.S.C. §

78u-4), establishes a procedure for the appointment of lead plaintiffs in private securities class

actions.  15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(I).  Within twenty (20) days of the time a class

action is filed, the plaintiff(s) who filed the initial action must publish notice advising class

members of the pendency of the action and of their right to move within sixty (60) days of the

publication of the notice to be appointed lead plaintiff.  Specifically, § 21D (a)(3)(A)(i) of the

---

[3] Because the Agreement and the exhibits thereto constitute, contain and reflect highly confidential, sensitive, non-public proprietary information concerning the FrontPoint Defendants, Plaintiffs have not filed those documents herewith.  The exhibits to the Agreement were produced by the FrontPoint Defendants to Plaintiffs' counsel on condition that, due to their highly confidential, sensitive, non-public nature, Plaintiffs' counsel would treat them as confidential and if Plaintiffs deemed it necessary to file them with the Court, Plaintiffs would seek leave to file them under seal.  Likewise, because the Agreement also contains highly confidential, non-public information regarding the FrontPoint Defendants, the Agreement itself provides that it and its exhibits thereto will be treated as confidential and that any party seeking to file the Agreement with the Court must seek leave to file it under seal. Accordingly, if the Court would like Plaintiffs to submit the Agreement and its exhibits for review by the Court or Plaintiffs deem it necessary to submit those documents in support of their motion, Plaintiffs will file a motion to seal and request that the Court allow those documents to be filed under seal.

[4] Defendants' counsel also provided Plaintiffs and their counsel with the identities of the Investment Advisor Defendants and the Hedge Fund Defendants, who were originally listed as John Doe defendants in the initial complaint, as well as some financial information regarding the Hedge Fund Defendants. Doc. No. 55 at 2.  Accordingly, Plaintiffs also withdrew their Discovery Motion.  Doc No. 55.

Exchange Act, as amended by the PSLRA, provides that within twenty (20) days of the filing of the complaint:

> …the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported class
>
> > (I)     of the pendency of the action, the claims asserted therein and the purported class period; and
> >
> > (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

On January 21, 2011, Plaintiffs' counsel caused a notice to be published in the *Investor's Business Daily*, pursuant to § 21D(a)(3)(A)(i), that announced that this securities class action had been filed and advised class members that they had until March 22, 2011 (60 days from the date of the notice) to file a motion to seek appointment as Lead Plaintiff in this action.  A copy of the notice and an Affidavit of Publication by *Investor's Business Daily* are attached as Exhibit 2 to the Haber Declaration.  Plaintiffs have timely filed the instant motion on March 22, 2011.

### (ii)      Plaintiffs are the Most Adequate Plaintiffs

Section 21D(a)(3)(B) of the Exchange Act provides that the Court shall consider any timely motion by a purported class member to be appointed lead plaintiff  "not later than 90 days after the date on which a notice is published," and that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B).

As demonstrated herein, Plaintiffs are the most adequate plaintiffs to represent the class. Accordingly, Plaintiffs seek an order: (1) appointing them as Lead Plaintiffs in this action; and (2) approving their selection of the law firm of Shapiro Haber & Urmy LLP as Lead Counsel and Izard Nobel LLP as Liaison Counsel.

Section 21D(a)(3)(B)(iii) of the Exchange Act establishes a rebuttable presumption that the "most adequate plaintiff" for purposes of appointment of lead plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

### (a) Plaintiffs Have a Significant Financial Interest in the Relief Sought

As of the filing of the instant motion and this memorandum, no other member of the putative Class has filed a complaint or filed a motion seeking to be appointed lead plaintiff. As a result, Plaintiffs are without information as to whether any other person or entity will be timely moving to be appointed lead plaintiff.

Plaintiffs have a significant financial interest in the relief sought having purchased shares of HGSI common stock contemporaneously with the Defendants' unlawful insider trading.[5] The

---

[5] As set forth in the Complaint and their respective certifications, Mr. and Mrs. Brodzinsky bought 1,000 shares of HGSI at $11.3299 on January 3, 2008, while also paying a commission of $9.99, for a total transaction cost of $11,339.89.  Haber Declaration, Ex. 3.  Ms. Neill bought 300 shares of HGSI at $5.9599 on January 25, 2008, while also paying a commission of $50.00 and a transaction fee of $4.95, for a total transaction cost of $1,842.92.  Haber Declaration, Ex. 3.

PSLRA does not specifically identify the procedure for determining which movant has the largest financial interest, but "district courts typically equate 'largest financial interest' with the amount of potential recovery." *See Mohanty v. BigBand Networks, Inc.*, No. C 07-5101 SBA, 2008 WL 426250, *4 (N.D. Cal. Feb. 14, 2008) (citing cases).  With regard to the potential recovery in this case, Section 20A measures the recovery as the amount of profits obtained or losses avoided by the defendants from their unlawful insider trading.  *See* 15 U.S.C. § 78t-1(b)(1); *see also In re Petco Animal Supplies, Inc. Sec. Litig.*, No. 05-cv-0823-H, 2005 WL 5957816, * 10 (S.D. Cal. Aug. 1, 2005) (noting section 20A provides private right of action and provides measure of damages as amount of disgorged profits).  As detailed in the Complaint, the Defendants avoided losses of at least $30 million dollars through their insider trading.  Thus, Plaintiffs may potentially recover at least $30 million dollars on behalf of the class.  Given that the measure of damages for insider trading is disgorgement of profits, the potential recovery for the class by any movant would be the same.

### (b) Plaintiffs' Efforts Thus Far On Behalf of the Class Rebut Any Presumption in Favor of Another Movant

Moreover, even if another member of the Class timely moves to be appointed lead plaintiff and claims to have a larger financial interest than Plaintiffs, that would only create a rebuttable presumption.  That presumption would be rebutted here, where the aggressive, successful protection of the interests of the class in this action by Plaintiffs and their counsel, as detailed above, demonstrates that they are "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B).  *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002) (finding presumption rebutted and appointing Regents of the University of California as lead plaintiff, noting prior zealous prosecution of action by Regents and its counsel).

10

Plaintiffs are the only members of the Class to have come forward and filed a complaint against the Defendants for their unlawful insider trading of HGSI common stock. As detailed above, Plaintiffs and their counsel have already made substantial successful efforts in this action to protect the putative class. Without Plaintiffs' and their counsel's successful efforts, the putative class could have obtained a judgment in this action against the Hedge Fund Defendants, only to find it to be uncollectable. Plaintiffs' counsel protected the class against that possible eventuality pursuant to the Agreement with the FrontPoint Defendants.[6] These actions and accomplishments demonstrate that Plaintiffs are the most adequate to be Lead Plaintiffs in this action and that their counsel should be appointed Lead Counsel. Similar actions in other cases have supported the appointment of a party and its counsel as Lead Plaintiff and Lead Counsel. *See, e.g., In re Enron Corp. Sec. Litig.*, 206 F.R.D. at 454, 458 (acknowledging zealous prosecution of matter prior to lead plaintiff's appointment, which included filing of motion for expedited discovery and motion to enjoin and freeze proceeds from insider trading); *cf also Kaminske v. JP Morgan Chase Bank, N.A.*, No. 09-00918 JVS, 2011 WL 521338, *3 (C.D. Cal. Jan. 3, 2011) (refusing to appoint different lead counsel in light of current counsel's "impressive qualifications . . . and its sufficient handling of the [case] thus far", noting class would not benefit from disruption associated with appointing new lead counsel); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, Case No. 09-C-7666, Memorandum Opinion and Order at 11-12 (N.D. Ill. April 7, 2010) (noting consideration of counsel's qualifications and efforts in prosecuting matter when appointing them co-lead counsel).

Therefore, for the foregoing reasons, the Court should determine that Plaintiffs are the most adequate representatives for the class and appoint them Lead Plaintiffs.

---

[6] *See* fn. 3 *supra*.

**(c)  Plaintiffs Otherwise Satisfy the Requirements of Fed. R. Civ. P. 23**

Section 21D(a)(3)(B)(iii)(cc) of the Exchange Act provides that the Lead Plaintiff(s) must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(cc).  Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable (2) there are questions of law or fact common to the class (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class and (4) the representative parties will fairly and adequately protect the interests of the class.

At this stage of the proceedings, a lead plaintiff candidate "need only make a 'preliminary showing that it satisfies the typicality and adequacy requirements of [Rule 23].'" *Ellenberg v. JA Solar Holdings Co. Ltd.*, 262 F.R.D. 262, 267 (S.D.N.Y. 2009) (citing *In re SLM Corp. Sec. Litig.*, No. 08 Civ. 1029, 2009 WL 969934, at *3 (S.D.N.Y. Apr. 1, 2009)); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) ("initial inquiry . . . should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy."); *Yates v. Open Joint Stock Co. "Vimpel-Comm.,"* No. 04 Civ. 9742(NRB), 2005 WL 1018428, *2 (S.D.N.Y. April 29, 2005) (citing *In re Cendant* and confining analysis to typicality and adequacy requirements).  For the reasons stated below, Plaintiffs satisfy the typicality and adequacy requirements of Rule 23.

### (i)    Plaintiffs Satisfy the Typicality Requirement

With regard to the typicality requirement, the court asks whether there is anything about the movant that is "markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based.'" *In re Cendant Corp. Litig.*, at 265 (quoting *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988)); *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ.7583(WHP), 2006 WL 991003, *3 (S.D.N.Y. April 17, 2006) (typicality does not require claims to be identical; requirement met where claims are not markedly different), *aff'd Chilton v. Chiumento Group*, 365 Fed. Appx. 298 (2d Cir. Feb. 16, 2010); *Petrolito v. Arrow Fin. Serv., LLC*, 221 F.R.D. 303, 310 (D. Conn. 2004) (finding typicality prong met where plaintiff alleged common pattern of wrongdoing and asserted he would present same evidence as the other class members).

Plaintiffs satisfy the typicality requirement because they purchased HGSI common stock during the Class Period contemporaneous with the Hedge Fund Defendants' sales of HGSI common stock while in possession of material, adverse non-public information, thereby being similarly damaged by Defendants' alleged violations of the Exchange Act, and SEC Rule 10b-5. Their claims, like the claims of all other putative class members, are based on the fact that Defendants violated the antifraud provisions of the federal securities laws due to their unlawful insider trading actions during the Class Period.  Plaintiffs' claims are the same as the rest of the putative class, and therefore they satisfy the typicality requirement.

### (ii)    Plaintiffs Satisfy the Adequacy Requirement

In assessing whether Plaintiffs satisfy Rule 23's adequacy requirement, the Court should consider "whether: (1) the lead plaintiff's claims conflict with those of the class; and (2) class

counsel is qualified, experienced, and generally able to conduct the litigation." *Ellenberg*, 262 F.R.D. at 267 (quoting *In re SLM Corp. Sec. Litig.*, 2009 WL 969934, at *3).

Plaintiffs satisfy the adequacy requirement because their interest is in obtaining the best recovery for the class and therefore do not conflict with the class.  As detailed in their certifications filed with the Complaint, Plaintiffs purchased HGSI common stock during the Class Period contemporaneous with Defendants' unlawful insider trading and are willing to serve as representatives on behalf of the Class in this action, including providing testimony at deposition and at trial, if necessary.  *See* Haber Declaration, Ex. 3.  There is no conflict between Plaintiffs' claims and those of the putative class; their interests are fully aligned.  Indeed, as detailed above, Plaintiffs and their counsel have vigorously prosecuted this action since the inception of this case, ensuring that funds would be available to collect on any judgment against the Hedge Fund Defendants, and they will continue to protect the class' interests going forward if appointed Lead Plaintiffs.

Plaintiffs also have retained highly competent and experienced counsel in this action. Shapiro Haber & Urmy is a well-known and highly-regarded securities litigation firm that has been appointed lead counsel in numerous class actions and that is fully capable of prosecuting this litigation.  Haber Declaration, Ex. 1.  Likewise, Izard Nobel, Plaintiffs' choice for liaison counsel, has extensive experience prosecuting securities class actions.  Haber Declaration, Ex. 4. Therefore, Plaintiffs fully satisfy the adequacy requirement.

In sum, under the provisions of the PSLRA, Plaintiffs have demonstrated that they are the most adequate plaintiffs to represent and protect the interests of the putative class members in this action.  Accordingly, Plaintiffs should be appointed Lead Plaintiffs.

## B. THIS COURT SHOULD APPROVE PLAINTIFFS' CHOICE OF LEAD AND LIAISON COUNSEL

Section 21D(a)(3)(B)(v), provides that "the most adequate plaintiff shall, subject to the approval of the Court, select and retain counsel to represent the class."   15 U.S.C. § 78u-4(a)(3)(B)(v).   Plaintiffs have selected Shapiro Haber & Urmy LLP to represent the Class as Lead Counsel and Izard Nobel LLP to serve as Liaison Counsel.

Each firm has extensive experience in the area of securities class action litigation and, as detailed in their respective resumes (Haber Declaration, Exs. 1 & 4), has successfully prosecuted numerous securities class actions on behalf of injured investors.   Indeed, Plaintiffs' counsel have further demonstrated their experience and willingness to protect the class' interests through their successful efforts in this litigation, as detailed above.   Consequently, this Court may be assured that in approving Plaintiffs' choice of lead counsel the members of the Class will receive legal representation of the highest quality.

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court issue an Order: (i) approving the appointment of Plaintiffs as Lead Plaintiffs; (ii) approving their choice of Shapiro Haber & Urmy LLP as Lead Counsel and Izard Nobel LLP as Liaison Counsel and (iii) granting such other and further relief as the Court may deem just and proper.

Respectfully Submitted,                    **PLAINTIFFS,**


/s/ Edward F. Haber
Edward F. Haber (*pro hac vice*)
Michelle H. Blauner (*pro hac vice*)
Ian McLoughlin (*pro hac vice*)
Adam M. Stewart
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile:  (617) 439-0134
ehaber@shulaw.com
mblauner@shulaw.com
imcloughlin@shulaw.com
astewart@shulaw.com


Jeffrey S. Nobel (CT 04855)
Nancy A. Kulesa (CT 25384)
Izard Nobel LLP
29 South Main Street, Suite 215
West Hartford, CT 06107
Telephone:  (860) 493-6292
Facsimile:  (860) 493-6290
jnobel@izardnobel.com
nkulesa@izardnobel.com

*Of Counsel:*

Paul Paradis
Michael A. Schwartz
Horwitz Horwitz & Paradis
405 Lexington Avenue, 61st Floor
New York, NY 100174
Telephone: (212) 986-4500
Facsimile: (212) 986-4501
pparadis@hhplawny.com
mschwartz@hhplawny.com

16

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2011, a true copy of the foregoing document was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or will be served on anyone not registered to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Edward F. Haber
Edward F. Haber

17